1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

October 2008 Grand Jury

11

12

UNITED STATES OF AMERICA,        )        CR 09 00679
                                 )
              Plaintiff,         )        I N D I C T M E N T
                                 )
13
         v.                      )        [18 U.S.C. § 1349: Conspiracy
14                               )        to Commit Health Care Fraud;
                                 )        18 U.S.C. § 1347: Health Care
UBEN OGBU RUSH,                  )        Fraud]
15   CARLOS ALBERTO REZABALA, and        )
     PHITSAMAY SYVORAVONG,                )
16     a/k/a "May Syvoravong,"           )
                                 )
17              Defendants.              )
     _____)
18

19        The Grand Jury charges:

                         COUNT ONE
20
                     [18 U.S.C. § 1349]
21

22   A.   INTRODUCTORY ALLEGATIONS

23        At all times relevant to this Indictment:

          Defendants and Other Participants
24
          1.   Defendant UBEN OGBU RUSH ("defendant RUSH") owned and
25
operated the following four durable medical equipment ("DME")
26
supply companies (collectively, "the Rush DME companies") within
27
the Central District of California:
28
DLP:dlp

a.   Ubenette Associates ("Ubenette"), which was located at 460 West Carson Plaza Drive, Suite 120, Carson, California.  Ubenette became a Medicare provider in or about April 1999.  On or about October 31, 2005, Ubenette voluntarily terminated its status as a Medicare provider.

b.   U ETE Medical Distributors, Inc. ("U-ETE"), which was located at 15120 Atkinson Avenue, Gardena, California.  U-ETE became a Medicare provider on or about September 6, 2001.  On or about May 19, 2008, Medicare revoked U-ETE's status as a Medicare provider.

c.   Benete Medical Supply ("Benete"), which was located at 1001 West Carson Street, Suite L, Torrance, California.  Benete became a Medicare provider on or about May 5, 2004.  On or about April 29, 2008, Benete voluntarily terminated its status as a Medicare provider.

d.   Asenete, Inc., d/b/a Asenete Medical Supply ("Asenete"), which was located at 16444 Paramount Boulevard, Suite 205, Paramount, California.  Asenete became a Medicare provider on or about September 3, 2004.  On or about April 28, 2008, Asenete voluntarily terminated its status as a Medicare provider.

2.   Ubenette acted as a billing company for the Rush DME companies beginning on or about the following dates:

a.   Ubenette - January 17, 2001;

b.   U-ETE - October 15, 2001;

c.   Benete - June 2, 2004; and

d.   Asenete - September 22, 2004.

3.    On or about October 21, 2002, defendant RUSH incorporated Aliswel, Inc. ("Aliswel"), located at 15120 Atkinson Avenue, Gardena, California, the same location as U-ETE.  Aliswel took over the electronic billing for the Rush DME companies from Ubenette beginning on a date unknown, but no later than on or about March 18, 2005.

4.    Defendant CARLOS ALBERTO REZABALA ("defendant REZABALA") worked as a "marketer" for the Rush DME companies beginning on a date unknown, but no later than in or about January 2003, and continuing to in or about April 2005.  The term "marketer" refers to someone paid to recruit Medicare beneficiaries and refer them to a Medicare provider.

5.    Defendant PHITSAMAY SYVORAVONG ("defendant SYVORAVONG") worked as a marketer for the Rush DME companies beginning on a date unknown, but no later than on or about November 24, 2004, and continuing to in or about November 2006.

6.    Unindicted Co-conspirator No. 1 ("Co-conspirator No. 1") worked as a marketer for the Rush DME companies beginning on a date unknown, but no later than in or about January 2003, and continuing to in or about October 2005.  Co-conspirator No. 1 died in or about June 2008.

The Medicare Program

7.    Medicare was a federal health care benefit program operated by the United States Department of Health and Human Services ("HHS") that provided benefits to individuals who were over the age of 65 or disabled.  Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a

3

1    federal agency under HHS.

2        8.   Medicare was subdivided into several parts, including

3    Medicare Part B.  Medicare Part B covered payment for

4    physician's services and outpatient care, as well as durable

5    medical equipment ("DME"), such as power wheelchairs, power

6    wheelchair accessories, hospital beds, and other medical devices

7    and supplies.

8        9.   CMS contracted with private insurance companies to

9    process and pay Medicare claims.  DME claims in Southern

10   California were processed and paid by the Durable Medical

11   Equipment Regional Carrier ("DMERC") for Region D, which covers

12   the western United States.  The DMERC from in or about January

13   2003 through in or about September 2006 was Cigna, and the DMERC

14   from in or about October 2006 onward was Noridian Administrative

15   Services ("NAS").

16       10.  Medicare beneficiaries were given a Health

17   Identification Card ("HIC") containing a unique Medicare

18   identification number.

19       11.  In order to participate in Medicare, DME companies,

20   pharmacies, physicians, and other health care providers that

21   provided equipment and services to Medicare beneficiaries were

22   required to submit an application in which the providers agreed

23   to comply with all Medicare-related laws and regulations.  If

24   Medicare approved a provider's application, Medicare assigned

25   the provider a Medicare "provider number."  A health care

26   provider with a Medicare provider number could file claims with

27   Medicare to obtain reimbursement for services rendered to

28

                                    4

beneficiaries.

12.   Medicare reimbursed DME companies and other health care providers for equipment and services rendered to beneficiaries.   Medicare would generally only pay reimbursement for DME and related items if they were prescribed by the beneficiary's physician and were medically necessary to the treatment of the beneficiary's illness or injury.

13.   Approved Medicare providers could submit claims either on paper or electronically.   When submitting a claim the provider was required to certify: (1) that the contents of the claim were true, correct, and complete; (2) that the claim was prepared in compliance with the laws and regulations governing Medicare; and (3) that the equipment or supplies referred to in the claim were medically necessary.

14.   A Medicare claim for DME reimbursement was required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the equipment or supplies provided to the beneficiary, the date that the equipment or supplies were provided, the cost of the equipment or supplies, and the name and unique physician identification number of the physician who prescribed or ordered the equipment or supplies.

15.   For some types of DME, depending on the year involved, Medicare further required that a provider include with the claim a Certificate of Medical Necessity ("CMN"), signed by the referring physician, certifying that the patient had the medical conditions necessary to justify the DME.

16.   Medicare paid for a motorized wheelchair only for

those beneficiaries who were so weak that they were unable to walk from bed to the other rooms in their home and had so little upper body strength that the beneficiary could not use a manual wheelchair.  A CMN was required for motorized wheelchair claims submitted on or before April 1, 2006, with dates of service on or before May 1, 2005.

17.  Medicare paid for the monthly rental of powered pressure-reducing mattresses only when the beneficiary either had lesions on the skin from lying too long on a less supportive bed or was susceptible to pressure sores due to extensive periods of immobility in bed.  A CMN was required for powered pressure-reducing mattress claims with dates of service on or before October 1, 2006.

18.  Medicare paid for a hospital bed only when a beneficiary's condition required positioning of the body in ways not feasible in an ordinary bed or required special attachments that could not be attached to an ordinary bed.  A CMN was required for hospital bed claims with dates of service on or before October 1, 2006.

19.  Medicare paid for enteral nutrition only when the beneficiary was unable to consume normal food and drink and instead had to ingest the enteral nutrition through a tube or shunt.  A CMN was required for enteral nutrition claims submitted on or before July 1, 2007.  For enteral nutrition claims submitted after July 1, 2007, a DME Information Form ("DIF") completed by the DME provider was required.

//

B.   OBJECT OF THE CONSPIRACY

20.   Beginning no later than in or about May 1999, and continuing to in or about July 2007, in Los Angeles County, within the Central District of California, and elsewhere, defendants RUSH, REZABALA, and SYVORAVONG, together with Co-conspirator No. 1 and others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed to execute a scheme to defraud a health care benefit program, that is, Medicare, in violation of 18 U.S.C. § 1347.

C.   THE MANNER AND MEANS OF THE CONSPIRACY

21.   The object of the conspiracy was carried out, and to be carried out, in substance, as follows:

a.   Defendant RUSH would use the Rush DME companies to submit false and fraudulent claims to Medicare for DME that was either never delivered or not medically necessary.

b.   Defendant RUSH would obtain the Medicare beneficiary names and numbers used to submit the false and fraudulent claims to Medicare from various sources, including from defendant REZABALA, defendant SYVORAVONG, Co-conspirator No. 1, and other marketers known and unknown to the Grand Jury.

c.   Defendant REZABALA, defendant SYVORAVONG, Co-conspirator No. 1, and other marketers known and unknown to the Grand Jury would find Medicare beneficiaries willing to visit a referring physician and provide their Medicare information in exchange for free DME items.

d.   Defendant REZABALA, defendant SYVORAVONG, Co-conspirator No. 1, and other marketers known and unknown to the Grand Jury would assure the recruited Medicare beneficiaries

1  that they would not be required to pay the standard co-payment
2  charged to Medicare beneficiaries for medical services incurred
3  under Medicare, and the Rush DME Companies in fact did not bill
4  the recruited beneficiaries for such co-payments.

5        e.   Defendant REZABALA, defendant SYVORAVONG, Co-
6  conspirator No. 1, and other marketers known and unknown to the
7  Grand Jury would arrange transportation for the recruited
8  Medicare beneficiaries to visit the referring physician when
9  necessary.

10        f.   Defendant SYVORAVONG and Co-conspirator No. 1
11  would pay physicians cash kickbacks in exchange for prescribing
12  DME items for the Medicare beneficiaries they had recruited.

13        g.   Co-conspirator physicians would sign blank CMN
14  forms for Medicare beneficiaries recruited by defendant
15  SYVORAVONG and Co-conspirator No. 1, even though the physicians
16  had not examined the Medicare beneficiaries or an examination
17  revealed that the DME requested was not medically necessary.

18        h.   Some of the co-conspirator physicians would
19  complete false and fraudulent CMN forms for DME items for
20  Medicare beneficiaries recruited by a marketer, even though the
21  prescribed items were not medically necessary.

22        i.   In some instances, Co-conspirator No. 1 would
23  collect, or arrange for the collection of, Medicare information,
24  including the HIC numbers of recruited patients, and use that
25  information to fill in blank CMN forms that contained only a
26  physician's signature.  In other instances, Co-conspirator No. 1
27  would forward blank CMN forms that contained only a physician's
28  signature to a Rush DME company to be completed by a Rush DME

8

1   company employee.

2       j.    Defendant RUSH would pay defendant REZABALA,

3 defendant SYVORAVONG, Co-conspirator No. 1, and other marketers

4 known and unknown to the Grand Jury in exchange for recruiting

5 Medicare beneficiaries.   In order to conceal that she was paying

6 defendants REZABALA and Co-conspirator No. 1 for recruiting

7 beneficiaries, defendant RUSH placed defendants REZABALA and Co-

8 conspirator No. 1 on the payroll of a Rush DME Company.

9       k.    Defendant RUSH would knowingly use the recruited

10 beneficiaries' information, including the CMN forms obtained

11 from defendant REZABALA, defendant SYVORAVONG, and Co-

12 conspirator No. 1, to submit fraudulent DME claims to Medicare

13 for items purportedly provided to the recruited beneficiaries.

14       l.    Beginning in or about January 2001, defendant

15 RUSH would use Ubenette and Aliswel to bill Medicare on behalf

16 of all of the Rush DME companies.

17       m.    Defendant RUSH would cause Medicare payments for

18 the recruited beneficiary DME claims to be deposited into bank

19 accounts under her control.

20     22.   As a result of the fraudulent conspiracy, during the

21 approximate time periods below, Medicare made the following

22 payments to the following Rush DME companies:

23       a.    Between April 2, 1999, and October 29, 2005,

24 Medicare paid Ubenette approximately $3,264,677.30.

25       b.    Between January 1, 2001, and July 13, 2007,

26 Medicare paid U-ETE approximately $1,548,926.42.

27       c.    Between May 29, 2004, and July 11, 2007, Medicare

28 paid Benete approximately $923,530.31.

        d.    Between November 15, 2004, and June 26, 2007,
Medicare paid Asenete approximately $766,620.57.

D.    OVERT ACTS

        23.    In furtherance of the conspiracy, and to accomplish
its object, defendant RUSH, defendant REZABALA, defendant
SYVORAVONG, and Co-conspirator No. 1, together with others known
and unknown to the Grand Jury, committed and willfully caused
others to commit the following overt acts, among others, in the
Central District of California and elsewhere:

        Overt Act 1:  On a date unknown, but no later than on or
about February 1, 2004, Co-conspirator No. 1 recruited Medicare
beneficiary A.S.

        Overt Act 2:  On a date unknown, but no later than on or
about February 6, 2004, defendant RUSH caused claim number
04037811566000, which was for medically unnecessary enteral
nutrition and feeding tube kits, to be submitted through her
company Ubenette, on behalf of Medicare beneficiary A.S.

        Overt Act 3:  On or about November 24, 2004, defendant
REZABALA recruited Medicare beneficiary J.J.

        Overt Act 4:  On or about November 29, 2004, defendant RUSH
caused claim number 04334823144000, which was for a medically
unnecessary hospital bed, to be submitted to Medicare through
her company U-ETE, on behalf of Medicare beneficiary J.J.

        Overt Act 5:  On a date unknown, but no later than on or
about December 18, 2004, defendant REZABALA recruited Medicare
beneficiary G.P.

        Overt Act 6:  On or about December 21, 2004, defendant RUSH
caused claim number 04356839707000, which was for a medically

1  unnecessary motorized wheelchair and accessories, to be

2  submitted to Medicare through her company U-ETE, on behalf of

3  Medicare beneficiary G.P.

4      Overt Act 7:   On a date unknown, but no later than on or

5  about February 15, 2005, defendant SYVORAVONG recruited Medicare

6  beneficiary N.V.

7      Overt Act 8:   On or about March 10, 2005, defendant RUSH

8  caused claim number 05069805184000, which was for a medically

9  unnecessary motorized wheelchair and accessories, to be

10  submitted to Medicare through her company Benete, on behalf of

11  Medicare beneficiary N.V.

12     Overt Act 9:   On a date unknown, but no later than on or

13  about March 19, 2005, defendant REZABALA recruited Medicare

14  beneficiary E.V.

15     Overt Act 10:   On or about March 24, 2005, defendant RUSH

16  caused claim number 05083808802000, which was for a medically

17  unnecessary semi-electric hospital bed, to be submitted to

18  Medicare through her company Benete, on behalf of Medicare

19  beneficiary E.V.

20     Overt Act 11:   On or about April 20, 2005, defendant RUSH

21  caused claim number 05110801811000, which was for medically

22  unnecessary enteral nutrition and feeding tube kit, to be

23  submitted to Medicare through her company U-ETE, on behalf of

24  Medicare beneficiary E.V.

25     Overt Act 12:   On a date unknown, but no later than on or

26  about May 20, 2005, defendant SYVORAVONG recruited Medicare

27  beneficiary K.D.

28     Overt Act 13:   On or about May 24, 2005, defendant RUSH

caused claim number 105144831983000, which was for a medically unnecessary motorized wheelchair and wheelchair accessories, to be submitted to Medicare through her company Benete, on behalf of Medicare beneficiary K.D.

Overt Act 14:  On a date unknown, but no later than on or about June 20, 2005, defendant SYVORAVONG recruited Medicare beneficiary K.D.

Overt Act 15:  On or about June 22, 2005, defendant RUSH caused claim number 105173808818000, which was for a medically unnecessary air pressure mattress, to be submitted to Medicare through her company Benete, on behalf of Medicare beneficiary K.D.

Overt Act 16:  On or about January 6, 2006, defendant RUSH caused claim number 106006803332000, which was for medically unnecessary motorized wheelchair and wheelchair accessories, to be submitted to Medicare through her company Asenete, on behalf of Medicare beneficiary P.H.

Overt Act 17:  On a date unknown, but no later than on or about January 20, 2006, defendant SYVORAVONG recruited Medicare beneficiary K.L.

Overt Act 18:  On or about February 7, 2006, defendant RUSH caused claim number 106038807007000, which was for a medically unnecessary air pressure mattress, to be submitted to Medicare through her company Asenete, on behalf of Medicare beneficiary K.L.

Overt Act 19:  On a date unknown, but no later than on or about June 10, 2005, defendant SYVORAVONG recruited Medicare beneficiary A.C.

12

<u>Overt Act 20</u>:  On or about November 2, 2006, defendant RUSH caused claim number 106306846518000, which was for a medically unnecessary motorized wheelchair and accessories, to be submitted to Medicare through her company U-ETE, on behalf of Medicare beneficiary A.C.

## COUNTS TWO THROUGH ELEVEN

[18 U.S.C. §§ 1347 and 2(b)]

A.  INTRODUCTORY ALLEGATIONS

24.  The Grand Jury incorporates by reference and re-alleges Paragraphs 1 through 19 of this Indictment as though fully set forth herein.

B.  THE SCHEME TO DEFRAUD

25.  Beginning in or about May 1999, and continuing to no later than in or about July 2007, in Los Angeles County, within the Central District of California, and elsewhere, defendants RUSH, REZABALA, and SYVORAVONG, together with Co-conspirator No. 1 and others known and unknown to the Grand Jury, knowingly, willfully, and with intent to defraud, executed a scheme and artifice: (a) to defraud a health care benefit program, namely Medicare, as to material matters in connection with the delivery of and payment for health care benefits, items, and services; and (b) to obtain money from Medicare by means of material false and fraudulent pretenses and representations and the concealment of material facts in connection with the delivery of and payment for health care benefits, items, and services.

26.  The fraudulent scheme operated, in substance, in the manner described in Paragraphs 21 and 22 of this Indictment, which paragraphs are hereby incorporated and re-alleged as the fully set forth herein.

27.  As part of the scheme to defraud, defendant RUSH caused the Rush DME companies to fraudulently bill Medicare approximately $15,604,301.02, resulting in Medicare payments to the Rush DME companies of approximately $6,503,754.60.

14

C.  EXECUTION OF THE SCHEME TO DEFRAUD

28.  On or about the following dates, within the Central District of California and elsewhere, defendants identified below, together with others known and unknown to the Grand Jury, for the purpose of executing the scheme to defraud described above, knowingly and wilfully caused to be submitted to Medicare the following false and fraudulent claims, among others:

| COUNT | DEFENDANT(S) | CLAIM NO. | DATE SUBMITTED | AMOUNT PAID | PATIENT |
|-------|--------------|-----------|----------------|-------------|---------|
| TWO | RUSH REZABALA | 04334823144000 | 11/29/2004 | $100.76 | J.J. |
| THREE | RUSH REZABALA | 04356839707000 | 12/21/2004 | $5124.80 | G.P. |
| FOUR | RUSH | 05069805184000 | 3/10/2005 | $5124.80 | N.V. |
| FIVE | RUSH REZABALA | 05083808802000 | 3/24/2005 | $101.82 | E.V. |
| SIX | RUSH REZABALA | 05110801811000 | 4/20/2005 | $143.28 | E.V. |
| SEVEN | RUSH SYVORAVONG | 105144831983000 | 5/24/2005 | $5124.80 | K.D. |
| EIGHT | RUSH SYVORAVONG | 105173808818000 | 6/22/2005 | $562.81 | K.D. |
| NINE | RUSH | 106006803332000 | 1/6/2006 | 5046.62 | P.H. |
| TEN | RUSH SYVORAVONG | 106038807007000 | 2/7/2006 | $539.98 | K.L. |

15

| COUNT | DEFENDANT(S) | CLAIM NO. | DATE SUBMITTED | AMOUNT PAID | PATIENT |
|---|---|---|---|---|---|
| ELEVEN | RUSH SYVORAVONG | 106306846518000 | 11/02/2006 | $0.00 | A.C. |

A TRUE BILL

/s/
_____
Foreperson

THOMAS P. O'BRIEN
United States Attorney

*Christine C Ewell*

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

DOUGLAS A. AXEL
Assistant United States Attorney
Chief, Major Frauds Section

BEONG-SOO KIM
Assistant United States Attorney
Deputy Chief, Major Frauds Section

DIANA L. PAULI
Assistant United States Attorney
Major Frauds Section